IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TERA CARRON                                                                                    PLAINTIFF

V.                                  NO. 3:15CV00271-JTR

CAROLYN W. COLVIN,                                                                       DEFENDANT
Acting Commissioner,
Social Security Administration

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Tera Carron, has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her claim for Disability Insurance Benefits ("DIB"). Both parties have filed Appeal Briefs, *Docs. 11 & 12*, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g).

On February 11, 2013, Carron protectively filed an application for DIB, alleging disability since February 15, 2012.[1] (Tr. 163-68, 185.) In her Disability

---

[1] At the administrative hearing, Carron's attorney amended the alleged onset date to November 20, 2012. (Tr. 67.)

Report-Adult, she stated that she was disabled because of chronic obstructive pulmonary disease ("COPD"), diabetes, thyroid problems, depression, and neuropathy. (Tr. 189.) After her claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ").

On February 24, 2014, the ALJ conducted an administrative hearing, where Carron and a vocational expert testified. (Tr. 64-81.) At the time of the hearing, Carron was forty years old and had completed high school. (Tr. 66.) She had past relevant work as a packer and an industrial cleaner in a manufacturing and processing facility. (Tr. 67-70, 78-79.)

In his August 25, 2014 decision, the ALJ found that Carron: (1) had not engaged in substantial gainful activity since her alleged amended onset date; (2) had "severe" impairments of lumbago,[2] stress incontinence, COPD, diabetes mellitus, depression and obesity; (3) did not have an impairment or combination of impairments meeting a Listing; (4) had the residual functional capacity ("RFC") to perform a modified range of sedentary work, which precluded the performance of her past relevant work; and (5) could perform other work existing in significant numbers in the national economy, with examples being an escort vehicle driver and telephone quote

---

[2]*See* Stedman's Med. Dictionary 514330 (defining lumbago as "[p]ain in mid and lower back").

clerk. (Tr. 49-59.) Accordingly, the ALJ concluded that Carron was not disabled.

On August 27, 2015, the Appeals Council denied Carron's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-6.) Carron then filed her Complaint appealing that decision to this Court. *Doc. 2*.

In Carron's Appeal Brief, she argues that the ALJ's physical RFC[3] assessment is not supported by substantial evidence because: (1) it does not include any limitations due to Carron's stress incontinence; and (2) the record does not contain an assessment of Carron's functional limitations by a treating or examining physician.

For the reasons discussed below, the Court concludes that Carron's arguments have merit.

## II. Discussion

"[B]ecause a claimant's RFC is a medical question," an ALJ's assessment of it must be supported by "some medical evidence of the claimant's ability to function in the workplace." *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

Here, the ALJ determined that Carron had the physical RFC for sedentary work, except that she should avoid work around excessive chemicals, noise, humidity, dust, fumes, temperature extremes, vibrations, gases or other pulmonary irritants. (Tr. 53.)

---

[3]RFC is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his or her physical and mental limitations. 20 C.F.R. § 404.1545(a)-(c).

Sedentary work primarily involves sitting, with occasional lifting of up to ten pounds at a time, and occasional walking and standing, for up to two hours in an eight-hour day. 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996).

In her disability paperwork, Carron reported that she experienced "constant" pain in her feet, hands and lower back, which was caused by "walking, sitting, standing." (Tr. 203.) At the administrative hearing, Carron testified that "muscle spasms in [her] back" prevented her from working at even a light-duty job due to limitations in sitting, standing and lifting. She testified that she could sit between fifteen minutes and an hour at one time before experiencing a spasm. She said she was not able to sit or stand for six hours of the day, or do a combination of sitting and standing for eight hours, and could only lift "a couple of pounds." (Tr. 71-73.)

On March 28, 2013, a non-examining state agency medical consultant reviewed Carron's medical records, which were minimal at the time, and concluded that her alleged physical impairments were "non-severe." (Tr. 86.)

Between the consultant's review and the February 24, 2014 administrative hearing, Carron was treated for back pain on five occasions. (Tr. 272, 283-88, 298, 300, 318-23.) On one of those occasions, June 6, 2013, she reported that she was falling two or three times a week, had stopped walking for exercise because it was causing too much back pain, and had to change positions when sitting or standing. (Tr.

298.)

After the hearing, Carron continued to receive treatment for chronic lower back pain, often radiating into her hips, including: (1) use of analgesics, muscle relaxants, heat, ice and non-steroidal anti-inflammatory drugs, which provided "mild" relief (Tr. 9, 19, 21, 24, 36); (2) prescription of hydrocodone (Tr. 13, 22, 25, 37-38); (3) evaluation and treatment at a pain management clinic (Tr. 9-10, 14, 16-22, 24); (4) L3-4, L4-5, L5-S1 facet joint nerve blocks, which provided 50% pain relief for about six hours (Tr. 18); and (5) bilateral sacroiliac joint injections on two occasions (Tr. 9-10, 16). At her last appointment, on April 7, 2015, she reported "no significant pain relief" from the injections, and was referred to neurology for further evaluation and treatment options. (Tr. 9-10.)

In his decision, the ALJ found that Carron had several "severe" physical impairments, including lumbago. However, the ALJ did not order a consultative evaluation to assess the extent to which those impairments affected her ability to function in the workplace. Because the reviewing state agency consultant had determined that Carron's physical impairments were "non-severe," she did not make any RFC findings. None of Carron's treating physicians evaluated her functional abilities. As a result, the record does not contain a functional assessment of Carron's physical abilities by *any* medical source.

There is no requirement that an RFC determination be supported by a specific medical opinion. *Hensley v. Colvin*, No. 15-2829, 2016 WL 3878219, *3 (8th Cir. July 18, 2016). However, in the absence of medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence" supporting the ALJ's RFC findings. *Id.*

Here, the more recent medical records from Carron's treating physicians provide support for her testimony that she suffers from chronic back pain, which has not been responsive to various treatments and which restricts her ability to perform even sedentary-level work. In addition, her physical capabilities may be further diminished by her obesity, stress incontinence, and diabetic neuropathy.

Under these circumstances, the evidence in the record falls short of the required medical evidence necessary to support the ALJ's physical RFC determination. This case must be remanded so that the ALJ can obtain specific medical evidence from a treating or examining physician regarding the extent to which Carron's physical impairments affect her ability to engage in work-related activities. The ALJ must update the medical records with any additional treatment or diagnostic results. The ALJ must then reevaluate the entire record, formulate a new RFC assessment if necessary, and proceed through the sequential evaluation.

### III. Conclusion

IT IS THEREFORE ORDERED that the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 20th day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE